```
            UNITED STATES DISTRICT COURT FOR THE
                  DISTRICT OF NEW HAMPSHIRE
```

<u>Jeffrey B. Gudim</u>

    v.                              Civil No. 05-cv-323-JD

<u>Jo Anne Barnhart, Commissioner,</u>
<u>Social Security Administration</u>


                              O R D E R

     Jeffrey B. Gudim brings this action under 42 U.S.C. § 405(g) seeking judicial review of the Social Security Administration Commissioner's decision granting him benefits only for a closed period.  The Administrative Law Judge ("ALJ") found that Gudim was disabled due to morbid obesity and severe obstructive sleep apnea from February 11, 2002, until June 30, 2003, when he improved to the point that he could perform work at a sedentary level except that he could not work around hazardous machinery or in dusty environments.  Gudim challenges the ALJ's finding of medical improvement.


                               <u>Background</u>

    Jeffrey B. Gudim was thirty-one years old in October of 2003, when the ALJ issued her decision, and had completed the twelfth grade.  He was married and had two young children.  He had previously worked as an assembler and a machine operator, but

he was laid off due to problems with tardiness, attendance, and concentration.

Dr. Reeves evaluated Gudim for sleep apnea in April of 2001 and also noted morbid obesity and borderline hypertension. Gudim underwent a sleep study in April of 2001 and again in May of 2001, when he used a CPAP breathing machine. Gudim saw a dietician in May of 2001, but could not be weighed then because of his large size. Gudim reviewed the results of his sleep testing with his treating physician, Dr. David Olken. They discussed use of the CPAP unit and weight loss options. In August of 2001, Gudim reported to Dr. Reeves that he was having difficulty sleeping because he was knocking the CPAP mask off during the night. He complained of daytime somnolence.

In August of 2002, Dr. Olken reported that Gudim had "really failed" in trying to diet and that his sleep apnea was worse. Gudim requested information about gastric bypass surgery. In December of 2002, Gudim underwent pulmonary function testing. At that time, he was six feet tall and weighed 440 pounds. The testing showed a moderate to severe limitation in function due to morbid obesity. In January of 2003, Dr. Olken wrote that Gudim was unable to be gainfully employed because of his obstructive sleep apnea and morbid obesity.

Also in January of 2003, Gudim's medical records were

reviewed by a state disability determination services consultant physician, Dr. Burton Nault.  Dr. Nault gave his opinion that Gudim could lift up to twenty pounds occasionally, could lift ten pounds frequently, could sit for six hours in an eight hour work day, and could stand or walk for the remaining two hours.  Dr. Nault limited Gudim to only occasionally doing activities that required climbing, balancing, stooping, kneeling, crouching, and crawling.

Gudim was admitted to the hospital February 13, 2003, due to shortness of breath and a reduction of oxygen supply.  He reported that he had not been using his CPAP unit, because he could not tolerate it, that he had gained weight, and that he was experiencing edema.  Massive edema in his thighs was present when he checked into the hospital.  He weighed 528 pounds.  He was discharged on February 24, 2003, with a BIPAP breathing machine and medication.  He lost some weight while he was hospitalized, and the edema improved.  His diagnoses in the hospital were acute bronchitis, morbid obesity with obstructive sleep apnea, chronic hypoxia with pulmonary hypertension, and right-sided heart failure.

Gudim returned to the dietician on March 19, 2003, for diet counseling.  He was prescribed a 2000 calorie and low fat meal plan.  He said that he was walking one mile every other day.  By

June of 2003, he had increased his walking to one and one-half to two miles three times per week.  He was also planning to have gastric bypass surgery.

On June 30, 2003, Gudim saw Dr. Olken and reported that he was using the BIPAP machine and was feeling better.  Gudim said he had lost 40 pounds, down to 504 pounds.  Dr. Olken noted that Gudim was motivated to diet and was getting regular exercise.  On July 10, 2003, Gudim told the dietician that he was down to 500 pounds and was walking three times a week.

Dr. Olken completed a sleep disorders residual functional capacity questionnaire on October 10, 2003, in which he said Gudim had insomnia, obesity, hypertension, excessive daytime sleepiness, sleep apnea, fatigue, and disturbance in cognitive function, but he did not estimate the frequency or duration of these symptoms.  Dr. Olken also stated that Gudim "[m]aintains markedly limited activities due to disease."  With respect to Gudim's functional capacity, Dr. Olken found that Gudim should avoid climbing, heights, powered machines, moving machinery, hazardous conditions, and dusty environments.  He found that Gudim could lift up to twenty-five pounds occasionally and that he should avoid work that involved mostly standing or walking rather than sitting.  Dr. Olken indicated that Gudim's sleep problems limited him from performing at a consistent pace and

from dealing with normal work stress, and would cause him to be absent from work more than four times each month.  On October 10, 2003, Dr. Olken wrote a letter in support of Gudim's application for social security benefits that repeated his opinion that Gudim could not be gainfully employed because of his obstructive sleep apnea and morbid obesity.

    Gudim filed his application for social security disability insurance benefits on October 9, 2002, alleging that he had been disabled since February 11, 2002, due to severe sleep apnea, back pain, swollen feet, heavy breathing, and morbid obesity.  His application was denied, and he requested a hearing, which was held on October 21, 2003.  Gudim, his wife, and a vocational expert testified at the hearing.

    Gudim testified that he then weighed 489 pounds and that he had weighed 544 pounds in February of 2003 when he was hospitalized.  He testified that he was still falling asleep during the day and that he and Dr. Olken had discussed increasing the pressure on his BIPAP machine.  He said that he took care of his two children during the day and that he could wash some of the dishes but that he could only shop through one or two aisles at the grocery store.  He also said that his legs fell asleep after he sat for fifteen to thirty minutes.  Gudim's wife testified that he was sleeping better at night with the BIPAP

machine and that he actually got a good night's sleep.  She said that he could not do much housework because he could not stand up for the necessary amount of time.  She also said that Gudim did well with his exercises if he used his oxygen properly.

The ALJ described a hypothetical claimant to the vocational expert who was limited to sedentary work and could not work with hazardous machinery, open flames, or unprotected heights.  The vocational expert testified that the claimant could not perform Gudim's previous light and medium duty work but could work in assembly positions, as a cashier, and as an order clerk.  Gudim's counsel added limitations that the claimant could not work at a consistent pace or deal with normal work stressors.  The vocational expert said that those limitations would impact the claimant's ability to do the jobs he had described.  When Gudim's counsel also added an expectation that the claimant would miss more than four days of work each month, the vocational expert said that he could not maintain employment in any of the described jobs.

The ALJ issued her decision on April 22, 2005, in which she found Gudim had severe obstructive sleep apnea and morbid obesity.  She concluded that he had been disabled for a closed period, from February 11, 2002, to June 30, 2003, and that he then improved so that he was no longer disabled.  She found that

after June 30, 2003, Gudim was able to perform sedentary work that did not require work around hazardous machinery or in dusty environments.  Based on the vocational expert's testimony, the ALJ concluded that there were jobs Gudim could do, despite his impairments, so that he was not disabled.

## Discussion

The court must uphold a final decision of the Commissioner denying benefits unless the decision is based on legal or factual error.  Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (citing Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).  The Commissioner's factual findings are conclusive if based on substantial evidence in the record.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted).  In making the disability determination, "[i]t is the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence."  Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991).

Absent an applicable exception, the Commissioner may terminate benefits only if there is substantial evidence to show that the recipient can now engage in substantial gainful activity because of medical improvement, or another listed circumstance, that is related to his ability to work.[1]  42 U.S.C. § 423(f); 20 C.F.R. § 404.1594(a); Rice v. Chater, 86 F.3d 1, 3 (1st Cir. 1996).  Medical improvement means "any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [he was] disabled or continued to be disabled." § 404.1594(b)(1). To determine whether medical improvement has occurred, the ALJ must "compare the prior and current medical evidence to determine whether there have been any such changes in the signs, symptoms and laboratory findings associated with the claimant's impairment." Rice, 86 F.3d at 2.  In addition, medical improvement must be related to the claimant's ability to work so that a decrease in the severity of symptoms without an increase in functional capacity does not provide substantial evidence to support a decision to terminate benefits.  § 404.1594(b)(2).

---

[1]The medical improvement standard applies when the Commissioner grants an application for benefits and terminates the benefits in the same action, providing benefits for a closed period of disability. Corrigan v. Barnhart, 352 F. Supp. 2d 32, 42-44 (D. Mass. 2004).

8

The ALJ found that Gudim was disabled from February 11, 2002, until June 30, 2003, due to severe obstructive sleep apnea and morbid obesity.  Those impairments caused daytime fatigue and shortness of breath.  The ALJ also found that Gudim had medically improved by June 30, 2003, based on Dr. Olken's office note on that day, indicating that Gudim had lost weight and was successfully using a BIPAP machine that helped his nighttime sleep.  Based on that improvement, the ALJ found that Gudim was not disabled after June 30, 2003.  The ALJ concluded that Dr. Olken's notes and findings in October of 2003, that Gudim continued to be impaired by an obstructive sleep disorder and morbid obesity to the extent that he could not be gainfully employed, were not supported by the record.

The ALJ found, based on her review of the hearing transcript and the medical records, that Gudim's energy level and breathing had improved so that he no longer fell asleep during the day.  She concluded that Gudim's functional capacity had improved to the extent that he was able to work at a sedentary level, as long as he avoided work around hazardous machines and in dusty environments.  The ALJ's conclusions, however, are not supported by the record.

Although Gudim reported at his June 30, 2003, appointment with Dr. Olken that he had lost forty pounds, he still weighed

9

504 pounds at that time. By the time of the hearing, he weighed 489 pounds. On December 10, 2002, however, when he was found to have a moderate to severe limitation in pulmonary function due to morbid obesity, Gudim weighed only 440 pounds. Dr. Olken's office note on June 30 reports that Gudim "is making great strides right at the moment" but does not include laboratory findings that can be compared to the results taken during the time Gudim was disabled.[2] Further, Dr. Olken still found that Gudim was morbidly obese in October of 2003 and that his obstructive sleep apnea and morbid obesity would prevent him from performing work at a consistent pace, would interfere with his ability to deal with normal work stresses, and would likely cause him to miss work more than four times a month.[3] In addition, contrary to the ALJ's finding, Gudim testified at the hearing that he still fell asleep during the day despite improvement in nighttime breathing due to the BIPAP machine.

---

[2]According to that note, laboratory work was planned for the end of October, 2003, but the administrative record does not include laboratory test results.

[3]The residual functional capacity evaluation completed by the state disability services consultant does not provide substantial evidence to support the ALJ's finding of medical improvement because it was completed on January 10, 2003, when the ALJ found that Gudim was disabled, contrary to that evaluation. In addition, the consultant's evaluation was done before Gudim was hospitalized in February of 2003, and, therefore, did not consider that event in the evaluation.

Therefore, the ALJ's finding that Gudim's disability terminated on June, 30, 2003, is not based on an analysis of medical improvement that is supported by substantial evidence in the record.  On remand, Gudim's medical records since June 30, 2003, should be reviewed to determine whether he has medically improved, and if so, whether his functional capacity is now such that he can work.

## Conclusion

For the foregoing reasons, the claimant's motion to reverse the decision of the Commissioner to terminate his benefits (document no. 8) is granted.  The Commissioner's motion for an order affirming the decision (document no. 9) is denied.

The court shall enter judgment accordingly and close the case.

SO ORDERED.

*/s/ Joseph A. DiClerico, Jr.*
Joseph A. DiClerico, Jr.
United States District Judge

May 25, 2006

cc: D. lance Tillinghast, Esquire
    David L. Broderick, Esquire